IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF GEORGIA

ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| v. | : | CRIMINAL CASE NUMBER: |
| DAMANI MIZELL | : | 1:18-CR-402-MHC-JSA |

## REPORT AND RECOMMENDATION

Defendant was arrested after leaving a defunct gas station known for drug activity. After his arrest, the police searched his car, which he had left parked at the gas station. Defendant's Motion to Suppress Evidence [20] relates to the warrantless search of the car, which the Government justifies on several grounds, including abandonment, the automobile exception, and inevitability. The Court is not convinced as to the applicability of all of the doctrines invoked by the Government, but agrees that the facts adduced at the evidentiary hearing support at least the application of the automobile exception to the warrant rule. Thus, the Court **RECOMMENDS** that the Defendant's Motion [20] be **DENIED**.

I.   **FACTS**

On the night of August 10, 2017, officers with the Atlanta Police Department's Proactive Enforcement Interdiction Unit ("APEX") were on a "direct patrol" of a defunct Texaco gas station on Donald Lee Hollowell Parkway. Tr.

[34] at 6-7, 18.  The officers purposefully targeted this location for a patrol because the location is known as a locus of drug trafficking activity.  *Id*. at 6-7; [38] at 5-6.

Officers arrived that evening at approximately 9:00 pm, and observed numerous individuals loitering, with cars parked at the defunct pumps.  [34] at 7, 22; [38] at 6.  As Officer Dougherty explained:

> As we were pulling up we specifically keyed in on a red scooter that was leaving the parking lot that had a large black male on it. He drove across the street and ended up on the sidewalk like leaving the location.  He did not have a helmet on and once he crossed the street the went on to the sidewalk and began driving down the sidewalk westbound on Donald Lee Hallowell.

[34] at 7.  Noting the helmet and sidewalk violations, Officer Dougherty and his partner, Seargent Heald, pursued the rider, who was later identified as the Defendant.  [34] at 7-8.  In doing so, the officers saw the Defendant repeatedly reached into a pocket and discard items.  *Id*.  Eventually, the Defendant stopped and was briefly detained.  *Id*. at 9.  Officer Dougherty then walked back up the Defendant's route to retrieve the discarded items.  *Id*. at 8-9.  Officer Dougherty found marijuana, a cell phone, and a pill bottle with residue.  *Id*.  The officers arrested the Defendant and brought him to the gas station.  *Id*. at 10-11.

Meanwhile, other officers were at the gas station.  Most of the loiterers and the parked cars had left, but there was one Cadillac that did not leave and which none of the "patrons" claimed ownership of.   [38] at 7-10. Registration checks indicated that the car was owned by the Defendant.  *Id*.

APD K-9 Officer Godwin had been called to the scene to conduct an "open air" sniffing search of the area with his dog, Arass. Arass alerted to the unclaimed, parked brown Cadillac registered to the Defendant. *Id*.; [34] at 24. Officer Godwin testified that he had worked with Arass for approximately seven years and they were up-to-date on all required training and certifications [34] at 19-21; Ex. 4. According to Officer Godwin, while Arass has registered at least one false negative—i.e., she failed on at least one occasion to alert on the presence of something she should have detected—she has never had a false positive result—which Officer Godwin defined as alerting on the presence of an odor that was not present. *Id*. at 26-28. Officer Godwin clarified that at least one occasion during the seven years Arass positively alerted to a car that was not found to contain drugs. *Id*. However, Officer Godwin verified the alert because he personally smelled the residual odor of drugs when he entered the car. *Id*.

After the K-9 alert, other officers left the scene with the intention of obtaining a search warrant for the car. [38] at 10-11. In the meantime, prior to the search, Officers Dougherty and Heald brought the Defendant in custody back to the gas station. [34] at 26. Because the officers had identified and arrested the owner of the vehicle, and because of the K-9 alert, the officers determined that they could search the car without a warrant. [38] at 10-11. The car was thus searched, and the officers found a gun, plastic baggies, and what appeared to be

Ecstasy pills. *Id*. at 11-12. The car was subsequently impounded by APD. *Id*. at 12-14. APD policy at the time would have required a complete search of any impounded vehicle. *Id*.

## II.   DISCUSSION

The Fourth Amendment to the United States Constitution protects the right of persons to be free from unreasonable searches and seizures. U.S. CONST. AMEND. IV. "It is a 'basic principle of Fourth Amendment law' that searches and seizures inside a home [or other private property] without a warrant are presumptively unreasonable." *Payton v. New York*, 445 U.S. 573, 586 (1980); *United States v. Santa*, 236 F.3d 662, 668 (11th Cir. 2000). Upon a motion to suppress evidence garnered through a warrantless search and seizure, the burden of proof as to the reasonableness of the search rests with the prosecution. *United States v. Freire*, 710 F.2d 1515, 1519 (11th Cir. 1983) (*citing United States v. Impson*, 482 F.2d 197 (5th Cir. 1973)). Thus, the government must demonstrate that the challenged action falls within one of the recognized exceptions to the warrant requirement, thereby rendering it reasonable within the meaning of the Fourth Amendment. *Vale v. Louisiana*, 399 U.S. 30, 34 (1969); *United States v. Jeffers*, 342 U.S. 48, 51 (1951); *Friere*, *supra*.

The Government here asserts that the warrantless search was permissible on three theories, all of which the Government has the burden to establish: (1) the

automobile search exception, (2) abandonment of the car, and (3) inevitability (due to the need for an inventory search).  As explained below, the Court does not agree that the facts are established as to the second two theories (abandonment and inevitability) but agrees that the automobile exception permitted this search.

### A.   *Automobile Exception*

Under the automobile exception, a warrantless search of a car is constitutional if (a) the car is "readily mobile," and (b) probable cause exists to believe that it contains contraband or evidence of a crime. *United States v. Lanzon*, 639 F.3d 1293, 1299–1300 (11th Cir. 2011); *United States v. Watts*, 329 F.3d 1282, 1286 (11th Cir. 2003).

Defendant does not specifically contest the mobility element.  Notably, this element is easily-met, even including as to vehicles temporarily immobilized by serious mechanical problems.  *See, e.g., United States v. Fields*, 456 F.3d 519, 524 (5th Cir.2006) (applying automobile exception after car had crashed into a wall, because "even where an automobile is not immediately mobile at the time of the search, 'the lesser expectation of privacy resulting from its use as a readily mobile vehicle justifie[s] application of the vehicular exception.'") (*quoting California v. Carney*, 471 U.S. 386, 391 (1985); *United States v. Mercado*, 307 F3d 1226, 1229 (10th Cir. 2002) ("We are of the view that mere temporary immobility due to a readily repairable problem while at an open public repair shop does not remove the

vehicle from the category of 'readily mobile.'"); *United States v. Rommann*, 902 F.2d 1570 (6th Cir. 1990) (unpublished) ("The only remaining question is whether the fact that the truck was temporarily up on a jack with a wheel off dictates a finding that the search was illegal. We conclude that it does not . . . .") (*citing United States v. Markham*, 844 F.2d 366, 367-68 (6th Cir. 1988)); *United States v. Vega-Cervantes*, No. 1:14-CR-234-WSD-JFK, 2015 WL 4877657, *10-*11 (N.D.Ga. August 13, 2015) (vehicle needing to be jump-started and which was on a lift for repairs was, nevertheless, "readily mobile" for purposes of application of the automobile exception).

In this case, the car had a temporary tag, was parked in an apparently ordinary way (albeit at a defunct gas pump), the registered owner was present at the gas station, and the testimony lacked any indication of any visible problem suggesting that the car was non-operational. These facts allow the strong inference that the car had been used by the owner to travel to and park at the gas station, and therefore easily meets the standard for being "readily mobile."

Defendant instead suggests that a warrantless search of a vehicle is only permitted in cases involving actual traffic stops of moving vehicles. But the automobile exception does not only apply to traffic stops. The doctrines applies more broadly to all vehicles readily *capable* of moving, whether the police encountered the vehicle while it was moving or not. *See, e.g., United States v.*

*Delva*, 922 F.3d 1228, 1245 (11th Cir. 2019) (upholding warrantless search of a parked car, which was not parked in any constitutionally protected "curtilage," under the automobile exception). As explained above, Defendant does not contest, and the facts readily suggest, that Defendant's car was capable of movement.

As for the second element of the automobile exception, probable cause exists to conduct a warrantless search when "there is a fair probability that contraband or evidence of a crime will be found in the vehicle" under the totality of the circumstances. *United States v. Tamari*, 454 F.3d 1259, 1261–62 (11th Cir. 2006) (quotations omitted). That standard was also met here.

Indeed, by the time of the search, the officers had already arrested the owner of the vehicle on narcotics charges, based on observing him throw away marijuana, a bottle containing residue, and a cellphone that he apparently did not want the police to find. In addition to these observations, a certified and trained K-9 animal positively alerted to the presence of drug odors within the car. Finally, all of this occurred in a well-known area for drug activity.

While the dog had on at least one prior occasion positively alerted to a car that did not end up having actual drugs still inside, Officer Godwin testified that he personally smelled the odor of drugs in that car, thus verifying the accuracy of the alert. In any event, a single "false" alert in seven years would not necessarily

vitiate the reliability of this K-9, particularly when the alert in this case was combined with other facts known to the officers as to the Defendant's possession of drugs. Indeed, as noted above, the alert in this case was corroborated by the officers' personal observations of the Defendant's possession of drugs. Therefore, the officers possessed probable cause to search the car.

Defendant finally complains that the dog sniff was impermissible to the extent that it prolonged any detention of the Defendant. This is an inapposite issue. Under *Terry v. Ohio*, 392 U.S. 1 (1968), an officer may briefly detain a driver during a traffic stop, but the duration of the stop must be limited to the time necessary to effectuate the reason for the stop itself. *See United States v. Pruitt*, 174 F.3d 1215, 1219 (11th Cir. 1999). Thus, it is true that the police cannot prolong a stop based on reasonable suspicion of a traffic violation, such as speeding, for purposes of summoning a drug dog. *See United States v. Boyce*, 351 F.3d 1102 (11th Cir. 2003).

This sniff, however, did not occur during a *Terry* stop, and did not in itself prolong any detention. Rather, an arrest that had already been made based on probable cause independent of any use of Arass's nose. For these reasons, the facts support the application of the automobile exception and Defendant's arguments to the contrary are meritless. His Motion should be **DENIED**.

**B.** *Other Grounds*

As noted above, the undersigned does not find that the Government has met its burden to show the applicability of the abandonment or inevitability doctrines. For completeness, the Court will include a discussion of those issues below.

A car owner can be deemed to abandon any property interest in the car when he flees the car to evade the police. *See United States v. Falsey*, 566 Fed. App. 864, 867-68 (11th Cir. 2014) (suspect deemed to have abandoned his car for Fourth Amendment purposes when he drove down a street at high speed believing he was being chased by the police, parked in a marked spot, and then ran off into the woods); *United States v. Jefferson*, 451 Fed. App. 833, 834 (11th Cir. 2011) (suspect deemed to have abandoned his car by running away during a traffic stop); *United States v. Williams*, 569 F.2d 823, 824-26 (5th Cir. 1978) (suspect abandoned his trailer when he unhooked it from his truck at a rest stop and then drove away while being pursued by federal agents); *United States v. Edwards*, 441 F.2d 749, 751-753 (5th Cir. 1971) (a suspect abandoned his car when he left it running, with the keys in the ignition, and ran away from the police).

However, one does not automatically abandon a car just by parking it and temporarily leaving it at a parking spot. "Abandonment is primarily a question of intent, and intent may be inferred from words, acts, and other objective facts-the question being whether the actor has voluntarily discarded or relinquished his

interest in the property in question." *United States v. Scrivner*, 680 F.2d 1099, 1100-1101 (5th Cir. 1982)

This is not a case where the Defendant stopped and ran from his car while in the process of being pursued by the police, thus purposefully and obviously leaving his car behind to the custody of the officers. Rather, the Defendant apparently arrived at the Texaco station and parked his car there with every intention of driving away again when he was finished with his business. That he later drove away in a scooter—after the car had already been parked—does not necessarily suggest an intent to abandon the car. Even if Plaintiff was trying to avoid the police, the Defendant may very well have expected and assumed that the car would still be sitting there in the parking spot and available to him to the extent he was successful in evading Officer Dougherty and/or at least in evading being caught with drug evidence. After all, it would seem doubtful that a stop based solely on a lack-of-helmet charge, or sidewalk-riding charge, would justify or result in any sort of arrest.

Although the gas pumps of the Texaco were not operational, there were other shops apparently open nearby, and the Government adduced no evidence that the car was parked in an obviously illegal fashion such that Defendant would have known that it would have been towed away before he had a chance to return. And the Government also adduced no other specific facts, such as whether the doors

were unlocked, the windows were open, or whether (as in some cases involving the abandonment doctrine) the ignition was left running. Based on the totality of the record, and considering that the Government bears the burden to prove the Defendant's intent to abandon, the undersigned declines to endorse the application of the abandonment doctrine here.

The Government also argues that the search of the car was inevitable, because an inventory search would have been required at some point under the APD's impoundment policies. The Court suspects that this is likely so. But as a technical matter the Government did not adduce sufficient evidence in the record to support application of the inventory/impoundment exception.

The Supreme Court has recognized the reasonableness of inventory searches when executed in accordance with standard police practice. *See e.g., South Dakota v. Opperman*, 428 U.S. 364, 376 (1976); *see also United States v. Edwards*, 577 F.2d 883, 893 (5th Cir.) (en banc), cert. denied, 439 U.S. 968 (1978). Judicial tolerance of such searches derives from the need to protect the owner's property, to protect the police from disputes over lost property and to protect the police and the public from potential danger and nuisances. *Opperman*, 428 U.S. at 369; see also *United States v. Prescott*, 599 F.2d 103, 105 (5th Cir.1979). To conduct a routine inventory check, law enforcement officials need not obtain a warrant. *See United States v. Bosby*, 675 F.2d 1174, 1179 (11th Cir.1982). However, "[i]nventory

searches must be limited to effectuation of the recognized purposes, for which they are conducted and they may not be used as a pretext for intrusive investigatory searches that would otherwise be impermissible." *Prescott*, 599 F.2d at 105. One of the strongest indications that an inventory check was indeed conducted for legitimate purposes is evidence that such a search is a standard practice for the particular law enforcement agency. *Id*. at 106.

In this case, the Government adduced evidence that the vehicle was impounded after the search, and that APD policies require an inventory search of all impounded vehicles. [38] at 12-13. What was missing from this presentation, however, was any explanation for why the vehicle was impounded and, critically, that it would have been impounded anyway had there been no search. Of course the car was impounded after it had *already been searched* and drugs and guns were found inside. At that point, the car was presumably deemed to be evidence or a receptacle of evidence directly relevant to a criminal case.

But that the police might impound evidence after they illegally searched it does not excuse the illegality. The Government's task, rather, was to show that the APD would have had to have impounded this car *anyway*, for some other reason, independent of it being evidence or otherwise related to this criminal investigation.

Independent reasons that would have inevitably required impoundment may very well have existed, and the Court suspects probably did exist. But the

Government adduced no testimony about APD's impoundment criteria and policies, and how they would have applied to a car parked on private property. And this is not a subject that the Court can properly take judicial notice or speculate about. While the Government introduced APD's Search and Seizure Policy into evidence—as Exhibit 5—this policy only says that impounded vehicles are to be subjected to an inventory search. This policy does not explain when and in what circumstances vehicles are impounded in the first place, and therefore fails to prove that an impoundment would have been inevitable absent the challenged search. To rely on this policy and the minimal testimony about it to justify the warrantless search in this case would be fatally circular. Therefore, the inevitability doctrine would not apply to justify the warrantless search in this case.

## CONCLUSION

The warrantless search in this case was permissible under the automobile exception. Therefore, the Motion to Suppress Evidence [20] should be **DENIED**.

This matter is now **READY FOR TRIAL**.

IT IS SO **RECOMMENDED** this 29th day of July, 2019.

_____
**JUSTIN S. ANAND**
**UNITED STATES MAGISTRATE JUDGE**